## MARY STONE v. JOSEPH C. TODD ET AL.

1. An action at law may be brought against heirs and devisees, under statute (*Rev.*, *p.* 476), although the claim be not presented to the administrator, and there is sufficient personal property to pay the debt.

Stone v. Todd.

2. An order of the Orphans' Court for sale of land to pay decedent's debts, where the personal estate is insufficient, is not the creditor's only remedy to reach the land.

3. Service rendered on a mere expectation of a legacy is not a good cause of action; but if there be an express promise to pay for it by a legacy, which is broken, an action will lie.

4. If there be a promise to pay for service by will, and acceptance so that an action is suspended until breach, the statute of limitations will run from the death of the promisor.

5. When accord and satisfaction are pleaded in bar, the evidence must show an accord executed, and not merely executory.

6. In this action by a housekeeper for service in the lifetime of decedent, the verdict held to be excessive, and option given to remit or a new trial granted.

On rule to show cause why a new trial should not be granted.

Stephen B. Todd died intestate, January 25th, 1883, leaving the defendants, his brothers and sisters surviving him, his heirs-at-law. This action was brought, January 18th, 1886, by the plaintiff, to recover for services rendered by her as housekeeper to the decedent, from May, 1859, to January 25th, 1883, the date of his death, for which she claimed at the rate of $50 per month, amounting, in all, to more than $14,000. The estate was large, and either the personal or real estate ample to pay all debts, including the entire claim of the plaintiff.

The pleadings, besides the denial of indebtedness, raise several special defences.

The material points were that the claim was, in whole or in part, barred by the statute of limitations; that the plaintiff did not present her claim to the administrators, who had, at the time the suit was brought, sufficient assets in hand to pay all debts; and accord and satisfaction by an alleged agreement between the plaintiff and defendants prior to the suit. There was a rule to bar creditors, which had expired before this action was brought, but there had been no distribution of the personal estate remaining in the hands of the administrators.

At the trial in the Union county Circuit the jury gave the plaintiff $10,000, and the court, on application, granted a rule to show cause why a new trial should not be granted.

Argued at November Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *R. V. Lindabury*.

For the defendants, *J. P. Osborne* and *A. A. Clark*.

The opinion of the court was delivered by

SCUDDER, J. There is no dispute between these parties that if the plaintiff have a legal cause of action she might bring suit against the administrators after the expiration of the rule to bar creditors, for the distributive shares had not been paid over to the persons entitled to the same, and were assets in the hands of the administrators for the payment of a ratable proportion of the claim of any creditor who should not have presented the same within the time limited in the rule to bar creditors. *Rev., pp.* 765, 766. The contention is that the personal estate is the primary and only fund for the payment of this debt, if anything be due, because it is sufficient to pay the entire claim of the plaintiff, and until it is exhausted she has no right of action against the heirs-at-law of the deceased, to whom his real estate has descended.

There are two methods provided by our statutes in which lands which have descended to heirs-at-law may be taken for the payment of the debts of the decedent: first, by an order of the Orphans' Court, obtained within one year after the decease, notwithstanding any alienation made or attempted on insufficiency of the personal estate to pay debts (*Rev., pp.* 766, 770); or, secondly, by action brought by creditors against the heirs to fix their liability in regard to any lands, tenements or hereditaments which have descended to them. *Rev., p.* 476.

The usual method to subject the lands of a debtor after death to the payment of his debts which are not specific liens

and encumbrances, is by the order of the Orphans' Court in the ordinary course of administration. As it is more convenient, and best preserves the rights of all creditors in one proceeding, it is most frequently used. But it is not the creditor's only remedy, nor is he compelled to take it in the first instance. Cases that have been cited to the contrary are founded on statutes which make lands liable for the debts of an ancestor where the personal estate shall be insufficient to pay all legal demands against him. Such are *Selover* v. *Coe*, 63 *N. Y.* 438; *McLean* v. *McBean*, 74 *Ill.* 134; *Woodbridge* v. *Page*, 1 *B. J. Lea* 135, and others cited on the argument.

It is in such cases and in those states where such laws are found that it may be said "that since the personalty constitutes the primary fund for the payment of the debts of a deceased person, no liability can be imposed on heirs-at-law by reason of their inheritance, save upon a deficiency of personal assets." *Schouler's Ex. & Ad.*, § 445.

There is no doubt that at common law, and by statute authorizing execution against lands, the personal estate is primarily liable for the payment of debts, and that in the equitable application of assets it is charged before lands, and it may be even called upon to pay debts secured upon land in exoneration of such land. *Whitehead* v. *Gibbons*, 2 *Stockt.* 230; *Keene* v. *Munn*, 1 *C. E. Green* 398.

These points, however, which were so strongly pressed in the argument before us, are aside from the direct issue in this case, which is, What effect must be given to the "act for the relief of creditors against heirs and devisees?" *Rev.*, *p.* 476. When this act, in section 1, says "that all and every creditor or creditors, whether by simple contract or specialty, and whether the heirs are mentioned therein or not, shall and may, by virtue of this act, have and maintain his, her or their action and actions against the heir and heirs-at-law of any debtor who hath already died or shall hereafter die intestate seized of any messuage, lands, tenements or hereditaments," &c., what shall stay the plaintiff, who stands in the position

of a creditor, in her action against these defendants, who hold lands by inheritance from her alleged debtor?

It is not sufficient to say that she has another and more convenient remedy. This may or may not be true. The time has passed for her to present her claim within the period limited by the order of the Orphans' Court, and for the restraint upon alienation under the statute; and if it were certain that there was another and a better remedy, the court cannot dictate to suitors when they have a choice of remedy. This act invoked by the plaintiff is an old statute, passed March 7th, 1797, and has stood without alteration since its enactment, except in its extension, by the supplement of 1853, to the case of non-resident heirs and devisees. The first section to which I have referred is copied from different sections of 3 and 4 *Wm. & M.*, *c.* 14 (1691); 1 *Evans' Eng. Stat.* 462, with the additions made by Mr. Paterson in his Revision (page 291) extending its remedy to debts by simple contract as well as specialties, and whether the heirs are mentioned therein or not. We need not refer to other particulars of the statute which do not apply to this case. We have here, as defendants, the heirs-at-law who have not aliened the estate cast on them. The remarkable change made in this law was the power to bind lands of an ancestor in the hands of heirs for simple contract debts, and whether the heirs were mentioned therein or not. Prior to these statutes, and at the common law, the heirs were liable only for specialty debts of the ancestor to the extent of the value of the land descended. *Davy* v. *Pepys*, *Plowd.* 438; *Buckley* v. *Nightingale*, 1 *Str.* 665; *Barber* v. *Fox*, 2 *Wm. Saund.* 134; 3 *Bac. Abr.* 460. A colonial act, passed December 2d, 1743 (*Allin.* 129), made real estate chattels to be seized, sold and disposed of for the satisfaction of debts; before that it seems they could not be sold, but only extended upon an *elegit*. This act was repealed and extended by subsequent legislation. *Warrick* v. *Hunt*, 6 *Halst.* 1. The act of 1797 charged heirs and devisees with the debts of those whose lands they took by descent or devise to the amount of the value of the lands. With proper

pleading they could protect themselves against further liability. The legislature have the power to pass such a law. *Watkins* v. *Holman*, 16 *Pet.* 25. Mr. Griffith, in his Law Register, vol. IV., p. 1289 (1822), says this law should be abolished, because it breaks in upon and defeats the real intent of the act of 1799, which was that lands should be liable for the debts of the decedent, but only under the control of the Orphans' Court. At the same time, he complains because there is not an adequate lien in either case to prevent the land from alienation. But the act of 1797 still remains among our statutes and has been recognized in its provisions by our courts. Since then, the act of December 12th, 1825, has given a lien on the real estate of the ancestor or devisor for one year after the decease.

*Skillman* v. *Van Pelt, Saxt.* 511, says: " Although it [this act] extends the remedies to all debts of the ancestor or the devisor, whether by specialty or otherwise, yet it preserves the vital principle that the purchaser, *bona fide,* shall be absolutely protected." *Den* v. *Jaques*, 5 *Halst.* 259, reversed on another point, held in an action of ejectment, that land aliened before suit brought by a creditor cannot be taken in execution on judgment against an heir for the debt of his ancestor. In *St. Mary's Church* v. *Wallace*, 5 *Halst.* 311, it was decided that the heirs of a deceased heir having lands by descent should be joined in an action against surviving heirs on the bond of their deceased ancestor. *Stilwell* v. *Tomlinson*, 7 *Vroom* 359, was a suit against the heirs for a debt of the ancestor, and gave a proper form of pleading in such case.

In *New Jersey Insurance Co.* v. *Meeker*, 8 *Vroom* 282, there is a full examination of our statute and the English statute from which, in part, it is taken, on demurrer to an action for breach of covenant against encumbrances contained in a deed of conveyance. It was held that an action of covenant would lie under this statute against heirs and devisees. *Fredericks* v. *Isenman*, 12 *Vroom* 212, was an action on a bond against the heir-at-law, under this act; a recovery was had, limited to the value of the lands in the condition in which they were at

the time of the descent cast. In none of these cases is there an intimation that the creditor must first proceed against the executor or administrator and exhaust the personal assets, or that he is confined to the remedy given by an order of the Orphans' Court directing the sale of lands for the payment of the debts of the decedent. In every case the suit was directly against the heirs or devisees, without any averment in the pleading, or proof of insufficiency of personal property to pay the debt or claim made by the creditor. There was no requirement, therefore, to present her claim in this case to the administrators before bringing this action, and the objection is not good cause for a new trial.

Another cause urged for new trial is that the services of the plaintiff were rendered on the mere expectation of a legacy, and not upon any understanding or contract that they would be thus compensated or otherwise paid for. The law is very clearly stated in *Grandin* v. *Reading*, 2 *Stockt.* 370, that where a person renders services to another, relying solely upon his generosity, and expecting to be compensated by a legacy, he cannot, when disappointed in his expectation, maintain an action at law for the value of those services. See, also, *Smith* v. *Smith*, 4 *Dutcher* 208. There is, upon such facts, no express or implied contract that can be enforced. It is like the case of children serving their parent before or after their majority; such service is presumed to be gratuitous, unless it be proved affirmatively that there was a contract, or understanding, or circumstances showing a reasonable and proper expectation that there should be compensation. The law will not presume a hiring or a promise to pay where this family relation is shown to exist between the parties. *Ridgway* v. *English*, 2 *Zab.* 409; *Updike* v. *Ten Broeck*, 3 *Vroom* 105; *Prickett* v. *Prickett*, 5 *C. E. Green* 478. But in ordinary cases the law will raise the presumption of a promise to pay from the mere fact of service, and it will prevail unless a contrary intention and understanding of the parties be shown. In this case the plaintiff came into the employment of the decedent as a stranger and as his housekeeper;

she performed valuable and meritorious services for many years, both in keeping his house and assisting him in farming work. She was industrious, frugal, and aided in the accumulation of his large property. He expressed to others, in her presence, his gratitude for her kindness and faithfulness, and his purpose to pay her for them. The mere fact that he intended to make a liberal provision for her by will, and so stated, will not defeat her recovery when he failed or neglected so to do. If it was their understanding that she should be paid, the intended will was but the method of paying an existing and admitted obligation to compensate for the services rendered, and if he failed to pay in the manner 'indicated, the plaintiff is entitled to recover, as a creditor, for the value of her services. *Robinson* v. *Raynor*, 28 *N. Y.* 494; *Martin* v. *Wright's Administrator*, 13 *Wend.* 460; *Lisk* v. *Sherman*, 25 *Barb.* 433; *Schouler Ex. & Ad.* 453.

There was evidence tending to show such agreement between the parties, and the verdict of the jury will be sustained, unless there is a decided preponderance of proof in favor of the party against whom it is found. There is nothing in the proofs to show that the services were gratuitous, while the presumption from the services rendered, and the acts and words of the decedent, repel the inference that she was not to be paid.

Upon the plea of accord and satisfaction the jury have also said, by their verdict, that this was not proved to their satisfaction. There was a proposition for a settlement, made by the heirs, to pay or secure to her the interest of $5000 during her life, but the evidence is conflicting as to the acceptance of this proposition, and there is a doubt whether there was an accord or agreement of mind to accept any sum in satisfaction of this claim; and it is quite certain that if there were an accord, it was merely executory and not executed. This is not sufficient to bar the action. *Oliver* v. *Phelps, Spenc.* 180; *S. C.*, 1 *Zab.* 597.

The time for which a recovery may be had is another point of dispute in the case. The jury have allowed compensation

for the full time of service, from May, 1859, to January 25th, 1883, when the intestate died.   It is contended that the statute of limitation bars a recovery beyond six years and six months prior to the commencement of this suit, on January 18th, 1886.   It is a general rule that when a party stands in a position that he can enforce a claim by action at law, the statute at that time attaches and begins to run thereon ; or, in other words, limitation or prescription does not begin to run until the creditor has a perfect right to prosecute his demand. In this case, therefore, it is essential to sustain this verdict to show that the decedent recognized the right of the plaintiff to compensation and promised to make it at a future time—that is, at his death, to which she assented.   If there was an agreement relating to the time of the promisor's death, then the right of action was suspended until that time, and the statute would not run until the breach occurred.   *Tuckey* v. *Hawkins,* 4 *C. B.* 655 ; *Wittersheim* v. *Carlisle,* 1 *H. Bl.* 631 ; *Fenton* v. *Emblers,* 1 *Wm. Bl.* 353.   In *Patterson* v. *Patterson,* 11 *Johns.* 379, it appeared that the plaintiff was to be compensated for his services by a provision to be made for him by his father (the defendant) in his will, and it was held that the plaintiff could not maintain an action for service during the lifetime of his father.   *Nimmo* v. *Walker,* 14 *La. Ann.* 581, decides that where one renders services for continuous years to another, on his promise to provide in his will for the party rendering such services, and he dies without making such provision, an action may be maintained for the value of the services, and the prescription or limitation is suspended until that time.   A similar case is found in *Quackenbush* v. *Ehle,* 5 *Barb.* 469, where there was a promise made by a father to compensate a son for services by a devise, which was not executed.   An action was sustained for work and labor, and it was ruled that suit might be brought within six years from the time of the father's death.   Such case being on a contingency that might happen within a year, it is not within the statute of frauds, and need not be in writing. But it is also well settled that where there is no express

agreement as to the time or measure of compensation for long-continued services, the law will not imply a postponement of compensation until the termination of the employment, but for the purpose of determining when the statute will begin to run, the hiring will be regarded as from year to year. *Beach* v. *Mullen,* 5 *Vroom* 343 ; *Davis* v. *Gorton,* 16 *N. Y.* 255. The jury have found that there was an understanding between the plaintiff and the deceased that she should remain in charge of his household during his life, without any claim or demand for services, and at his death, if she survived him, she should be compensated liberally for her services, either by will or by a charge against his estate.    The verdict can only be sustained upon such finding.    The facts are very close on this point. It is not entirely clear that if she had left before the death of the intestate an action for services rendered would have been suspended until his death upon any express agreement between them.    The result seems to have been reached by the jury from the peculiar circumstances of the dealing between the parties and their confidential relation, showing that there was such an understanding, by which the plaintiff and the decedent were bound, and his distinct statement that she should be well paid at his death, and similar expressions testified to by witnesses.    This is a case of great merit, and the verdict should not be set aside for this cause unless it appears that the jury have clearly mistaken and misapplied the facts.    We are not prepared to overrule their judgment in this matter.

It is difficult to determine the exact measure of damages, and whether an excessive amount has been given by the verdict.    As the plaintiff had served the intestate faithfully for so many years, and helped him to accumulate a large amount of property, he evidently had the purpose of giving her sufficient to support her for the balance of her life, and with this she was satisfied.    He had himself named the sums of $20,-000 and $15,000 to others as the amount he intended to give her, either in gross or by securing to her the interest thereof for life.    These amounts seem large, but he best knew what the value of her services had been to him, and while loose

declarations should not be received as admissions made by him sufficient to bind his estate, yet they are evidence that he did not regard her in the light of an ordinary servant, and that he intended to reward her liberally. There should not, under the evidence, be any stinted allowance, ·for the benefit of his collateral kindred, but a jury would be justified in giving her the full value of her services, estimated by his own standard so far as it shall appear to be reasonable and the expression of his deliberate judgment. This, certainly, is better evidence than the vague estimates of other witnesses who cannot have exact knowledge of all that she did for the benefit of his estate. It is not easy to say, upon the evidence, whether she received anything, or how much, as part of the produce of the farm came into her hands, and from it she paid all the household expenses. Beyond her support she acknowledges only that the sum of about $25 per annum was kept by her, and it is testified that he said she had never received anything. She, however, claims to own many articles of furniture in the house which have been purchased with the proceeds of the farm, and it was in evidence that she and the deceased had been heard to speak together of money she had at interest, amounting to $800, and another sum of $1000. She denies that she has money at interest received from the decedent.

Believing that the deceased would have dealt justly by the plaintiff if he had secured to her, by will, the interest of $15,000 for life, a sum named by him, the equivalent at his death, in cash, at her age, would be about $7500, for her nearly twenty-four years' services. If the plaintiff will make the reduction to that amount the verdict for that sum may stand ; if not, the rule for new trial will be made absolute.