Headley *v.* Leavitt.

CHARLES M. HEADLEY, appellant,

*v.*

MARTHA B. LEAVITT, respondent.

[Filed July 20th, 1903.]

1. Where a married woman takes up and becomes the owner of promissory notes on which she is accommodation endorser, her contract to release a prior endorser for sufficient consideration is binding upon her. It is a primary promise by her, which she is under no legal disability to make under section 26 of the Married Woman's act. *Gen. Stat. p. 2017.*

2. The consideration of such a contract need not move directly to the married woman, for if it passed to a third person at her request it is sufficient.

3. An accord and satisfaction that is unexecuted is not an available defence at law against the original cause of action, but it may in a proper case become available as an equitable defence thereto.

4. Where an equitable defence to such an action fails only because it was not cognizable in the law court, such result will be no bar, to the action of a court of equity, in applying such equitable remedy to the relief of a defendant by enjoining the collection of the judgment recovered in such action.

5. Such a defendant is not required to first test the accuracy of the ruling of the law court by writ of error before proceeding in equity. He · may accept the ruling of the law court and pursue his remedy at once in the court of equity.

On appeal from an order advised by Vice-Chancellor Reed denying an injunction.

*Mr. Linton Satterthwait,* for the appellant.

*Mr. John H. Backes,* for the respondent.

The opinion of the court was delivered by

HENDRICKSON, J.

This is an appeal from an interlocutory order denying to the complainant relief by injunction against a judgment obtained

against him by the respondent in the supreme court. Since this appeal was taken the respondent has departed this life and by order of this court the action stands revived as against Harry D. Leavitt, her executor.

Upon referring to the bill and affidavits it appears that the controversy arose in this way: The complainant and one William H. Leavitt, a son of the respondent, about the year 1892, organized the Headley-Leavitt Company, a New Jersey corporation, the former becoming president and treasurer and the latter secretary. The complainant was the owner of one-half of the capital stock and William H. Leavitt and his wife, Emma D. Leavitt, owned the other half, he holding one share thereof and his wife the balance.

The corporation had its place of business in the city of Trenton, and was a dealer in gas-fixtures, mantels and other builders' supplies. In the year 1895 the secretary, who had been a collector of moneys due the company, was found to be short in his accounts to the amount of about $6,000, which he had misappropriated. The company then had outstanding its notes in bank, aggregating about $6,600. These notes had been discounted upon accommodation endorsements made by the complainant and by the secretary, or by others procured by the latter. Among the accommodation endorsers procured by Leavitt were his father, Lyman Leavitt; his mother, Martha B. Leavitt; one Nicholas Jahn and one Enoch W. Hooper. The proceeds of all notes discounted were placed to the credit of the company.

A conference took place between the complainant and the secretary and the latter's father. The misappropriation and the financial embarrassment were among the subjects discussed. The son had promised to raise some money to pay part of his misappropriation, and the father refused to advance more money and shortly obtained the appointment of a receiver to wind up the affairs of the company as an insolvent corporation. A little later the respondent called upon complainant and said that she and her husband, knowing that their son was responsible for the failure of the company, had decided to take up all the accommodation paper of the company. The complainant replied that

he did not care to have them do that, but made this proposition: that if she, the respondent, would take up and relieve complainant of all responsibility for what notes were in the Mechanics National bank, together with the notes she and her husband had already taken up, the complainant would assume responsibility for the notes in the Trenton Banking Company. The respondent accepted this proposition and the two at once proceeded to the company's place of business and there, in the presence of the receiver, took from the note-book of the company two lists of notes, one list being made up of notes held by the Mechanics National Bank, designated in the bill as group A, and the other list being made up of notes held by the Trenton Banking Company, designated in the bill as group B. The two lists were made up so as to divide the notes as near equally as possible. The agreement as above indicated was there restated as applying to the respective lists, and reaffirmed between the parties. It was agreed that respondent would take up the notes in group A and relieve complainant from all liability thereon if the complainant would take up and become responsible for all notes in group B and relieve from liability thereon all the endorsers or makers thereof with the exception of the company, together with the $1,200 note in the Mechanics National Bank, on which the complainant and A. C. Reeves were accommodation endorsers. It was also agreed between the parties that they would have the notes protested so that they might present their claims to the receiver in better form, and that for whatever loss resulted upon the claims above the returns from the receiver, each would be responsible for his or her own loss.

Upon the notes in group A the respondent was an accommodation endorser after the complainant. Of the notes in group B she was accommodation endorser on one note for $100 after complainant. On five notes of this group there were other endorsers prior to complainant. Soon after the agreement thus made the complainant made known to the Trenton Banking Company his desire to assume personal liability for the notes in group B, though they were not yet due and his liability thereon was not yet fixed, and secured the bank by a mortgage upon

his city property, arranging with it to hold the notes until the affairs of the company should be wound up by the receiver.    The complainant was the largest creditor of the company and his object was to apply his dividends from the receiver to aid him in taking up the notes.    Both the complainant and the respondent presented claims to the receiver, based upon the notes in their respective lists, and received dividends thereon to the amount of eight per cent. of their claims.    There was a delay in settlement of the company's affairs by the receiver.

No demand was made by the Trenton Banking Company upon any of the endorsers of the notes in group B, nor any complaint made by the respondent to the complainant that he had not taken up the notes in group B and released the endorsers thereof.    Nor did the respondent give any notice to complainant of any desire or purpose on her part to rescind the contract before bringing her suit against the latter as endorser upon the notes in group A.    The first intimation the complainant had as to any dissatisfaction of the respondent in regard to said contract, or as to any delay in the final performance of its terms by complainant, was when, on October 15th, 1901, process was first served upon him in the suit.    The complainant appeared and put in the defence of accord and satisfaction founded upon the contract and the acts of the parties thereunder, but because the defendant had not, in fact, taken up the notes in group B and therefore could not show satisfaction the defence was overruled by the learned trial judge and verdict was directed for the plaintiff.

After the trial the complainant at once completed the performance of his part of the contract by taking up the notes in group B and releasing and discharging therefrom all the endorsers thereof.    These facts and others, to be hereafter referred to, were set out in the bill and relief was prayed, on the ground that it would be unconscionable to permit the judgment to be satisfied out of the complainant's property.    A demurrer was filed to this bill.    In support of the demurrer it was contended that the alleged contract by the defendant was invalid (1) because she was a married woman and her undertaking was to pay

the debt of another without consideration moving to her; (2) the agreement was not an accord and satisfaction; (3) the judgment was *res adjudicata.*

The learned vice-chancellor, after argument, filed a memorandum to the effect that he was unable to discover any equitable ground for restraining the common law judgment creditor from enforcing her rights thereunder.

The first ground of demurrant's contention would be good if the agreement of the wife was in the nature of a suretyship or of a collateral promise to answer for the debt of another within the meaning of section 26 of the Married Woman's act. *Gen. Stat. p. 2017.* The collateral promise here mentioned is of like character to that arising under a similar clause of the statute of frauds, requiring such promise to be made in writing in order to be enforceable (*Gen. Stat. p. 1603 § 5*), and is subject to a like construction. *First National Bank of Cranbury* v. *Dohm, 23 Vr. 363.* In that case the married woman purchased of a bank the note of her husband and a third person and the judgment obtained thereon, and gave her own note to the bank for the consideration; and it was held that, although no formal transfer had been made of the judgment, she became the equitable owner thereof and there remained no debt or liability of another person to the bank to which her promise could be collateral, and that the note was not invalid under the proviso of the Married Woman's act. And it was held, generally, in that case that if a defendant's promise is made upon a substantial consideration, moving to himself, for his own use and advantage, it creates an enforceable obligation, although not reduced to writing. The same principle is laid down in *Cowenhoven* v. *Howell, 7 Vr. 323,* where it was held that the statute of frauds does not apply where the effect of the new promise is to extinguish the liability of the original party before the obligation of the new promise attaches. This principle, as applied to contracts between persons contingently liable upon notes and others interested therein, is illustrated in the cases of *Sanders* v. *Gillespie, 59 N. Y. 251,* and *L'Amoreux* v. *Gould, 7 N. Y. 349.*

There is another aspect of the case *sub judice,* which shows

the promise to be original and not collateral. Complainant is not here relying upon that part of defendant's agreement which provided that she should take up and pay the notes upon which her action at law was brought. That part of her engagement had been performed (and, as may be presumed, voluntarily performed) before the action at law was commenced. The stipulation whose enforcement is now sought is this: that if and when she should acquire from the Mechanics Bank the notes in group A, she would release the complainant from all liability thereon. Such a stipulation is not collateral, it is original. Neither is it a promise to pay a debt; it is rather a promise that if the promisor shall acquire by purchase a certain chose in action, binding severally upon the promisee and others, the promisor will release the promisee from liability thereon. Such a promise is not within the statute.

It thus appears that the engagement of the respondent, whose enforcement is here sought, was not invalid under the proviso of the Married Woman's act. It is therefore valid if made upon sufficient consideration. Was her contract based upon a sufficient consideration? It cannot be said that any valid consideration arose to her growing out of her endorsement of the notes in group A, for she was only an accommodation endorser thereon, and being a married woman she could not be held liable. But one effect of the agreement, if performed, would be to release her son, William H. Leavitt, who stood primarily liable on a note of $800 in group A from his liability to the complainant, a subsequent endorser. It would also have the effect of releasing Jahn and Hooper, who became endorsers on notes in group B at her son's request. They were liable before complainant to an amount exceeding $900. Her husband was also released from contingent liability on one or more of the notes in group B. The consideration to respondent evidently arose out of a benefit to herself or to third persons she desired to aid, and out of the detriment to complainant by her inducing him to release endorsers prior to himself. The consideration to support a promise may be either a benefit accruing to the promisor or a loss or disadvantage to the promisee. *Conover* v. *Stillwell, 5 Vr. 54;*

*Corle* v. *Monkhouse, 5 Dick. Ch. Rep. 537.* The detriment to the promisee necessary to constitute a consideration is sufficient, if it consists of the simple surrender of a legal right. And, in fact, any act which constitutes a change of the legal position of the promisee may be a valid consideration. *Harr. Con. 91.* It was not necessary to the validity of the contract that the consideration should move directly to the respondent. It was sufficient if it passed to third persons at her request. *6 Am. & Eng. Encycl. L. (2d ed.) 686.* Nor does the matter of the adequacy or inadequacy of the consideration enter into the question of validity. That is left to the free choice and personal judgment of the parties. *6 Am. & Eng. Encycl. L. (2d ed.) 694.*

Are the complainant's rights foreclosed by the action of the common law tribunal? An affirmative answer must follow if the jurisdiction of that court was complete. But the defence of accord and satisfaction was overruled because it was unexecuted, or only in part executed. This condition renders the defence unavailable at law. *Allen* v. *Harris, 1 Ld. Raym. 122; Lynn* v. *Bruce, 2 H. Bl. 318; Stone* v. *Todd, 20 Vr. 274; Line & Nelson* v. *Nelson & Smalley, 9 Vr. 358.*

The defence offered would have been good in equity. The agreement was lawful in character at its inception. The defendant, in bringing the suit at law acted in disregard of it only because of the delay of complainant in actually taking up the notes in group B and discharging the endorsers thereon. The agreement was silent as to the time of performance. It will therefore be construed as requiring performance within a reasonable time—and that means a reasonable time under the particular circumstances of the case. *Harr. Con. 279, 280; Gaslight Company* v. *Manufacturing Company, 122 U. S. 300.* By giving the mortgage to the bank to secure the payment of the notes in group B out of his own private estate, he secured a binding contract from the bank to hold the notes until the receiver should be discharged. This was done in part performance of the contract. Neither the respondent nor the endorsers upon the notes in group B had suffered any injury or damage by the delay in final performance, nor were they likely to suffer any.

Headley *v.* Leavitt.

There was no refusal on the part of the complainant to perform his part of the contract by the actual taking up of the notes. The bank was made safe, and equity, we think, would have controlled this security for the benefit of the endorsers upon the notes in group B. It further appears that respondent's son, William H. Leavitt, died in 1901, and not until after this event was the suit commenced. By resting upon respondent's promise complainant was deprived of an opportunity to take action toward indemnifying himself as against the son on the $800 note in his lifetime. It is apparent, we think, that upon the facts stated the complainant, in reliance upon the respondent's promise, surrendered rights and changed his position in a way that would render it inequitable for her to be permitted to withdraw from the contract without any effort to restore him to his rights as they had before existed. Under the circumstances, we think the contract was an existing one at the time of the trial, and that the complainant had an equitable defence to the action, which was not within the jurisdiction of the common law court to consider.

This being so, the complainant is not barred in equity from seeking the remedy that was determined adversely to him in the law court. The rule is that where the party has equitable rights not cognizable in a court of law, which would in a court of equity have prevented such an adjudication as was made in the court of law, the judgment will interpose no obstacle to redress in equity, since the court of law had no proper jurisdiction of the subject-matter forming the basis of redress in equity. *2 Story Eq. Jur. 1573.* In *Smalley* v. *Line et al., 1 Stew. Eq. 348,* it was held that the fact that a complainant attempted to set up a merely equitable defence in a suit at law will not debar him from subsequently setting it up in a court of equity against the judgment. This doctrine is sustained, also, in *Hughes* v. *Nelson, 2 Stew. Eq. 547.* Nor is a party denied such remedy because he did not test the accuracy of the action of the law court in overruling his defence by a review on error. He may accept the ruling of the law court and pursue his remedy in equity. *Borcherling* v. *Ruckelshaus, 4 Dick. Ch. Rep. 340.*

The bill shows that soon after the trial in the law court, and before this bill was filed, the complainant, as before stated, took up and made satisfaction to the bank for all the notes in group B, and relieved and discharged from liability thereon all the makers or endorsers except the Headley-Leavitt Company. We think that under all the circumstances he did this within a reasonable time, and that he is entitled to invoke the equitable powers of a court of equity to protect him against the judgment of the defendant's executor.

The result is that the order dismissing the order to show cause will be reversed and an order should be made overruling the demurrer and directing that an injunction issue according to the prayer of the complainant's bill.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM, GREEN—13.

*For affirmance*—None.