## AMERICAN MUTUAL LIABILITY INS. CO. v. VOLPE et al.

### (Circuit Court of Appeals, Third Circuit. September 28, 1922.)

#### No. 2858.

1. **Accord and satisfaction** ⬚16—**Defense not available in law court where accord only partly executed.**

   The defense of accord and satisfaction is not available in a court of law, when the accord is unexecuted or only partly executed.

2. **Accord and satisfaction** ⬚16—**Defense good in equity, although accord is executory.**

   The defense of an executory accord is good in equity if the agreement is lawful in its inception.

3. **Judgment** ⬚430—**Defense of partly executed accord not foreclosed by judgment in law court.**

   Suit to enjoin execution on judgment obtained in state court of law, based on a partly executed accord with defendant, was not foreclosed by the judgment in the law court, as in that court the defense of a partly executed accord was unavailable. ·

4. **Courts** ⬚508(2)—**Scope of statute forbidding injunction by federal court of state court proceedings stated.**

   Judicial Code, § 265 (Comp. St. § 1242), forbidding federal courts to enjoin state court proceedings, except in bankruptcy cases, does not prevent federal courts from enjoining proceedings to enforce local statutes repugnant to the federal Constitution, nor from maintaining and protecting their own jurisdiction, properly acquired and still subsisting, by enjoining attempts to frustrate, defeat, or impair it through proceedings in state courts, nor from depriving a party, by means of injunction, of the benefit of a judgment obtained in a state court under circumstances where its enforcement would be contrary to recognized principles of equity. ·

5. **Parent and child** ⬚8—**Executed by father does not bind injured minor.**

   Release of minor's claim for loss of his arm was ineffective when made, not by his guardian, but by his father, his natural guardian.

6. **Execution** ⬚172(4)—**Injunction against execution of judgment against insured not granted insurer, where no showing insurer was liable over.**

   Insurer, alleging settlement with injured employé of insured, was properly denied injunction against execution of judgment against insured, obtained by the employee, where, although insurer alleged that the insured had threatened to sue complainant upon the policy of insurance, it was not alleged that the insurer was liable to pay the judgment, and it appeared that the insurer was not so liable, in that the injury did not come within the New Jersey Workmen's Compensation Act, while the insurance covered only compensation provided by such act.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by the American Mutual Liability Insurance Company against John Volpe and another. From a decree for defendants, complainant appeals. Affirmed.

Joseph Coult, Jr., of Newark, N. J. (Robert H. Southard, of New York City, of counsel), for appellant.

Robert H. Doherty, of Jersey City, N. J. (George S. Hobart, of Newark, N. J., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges. ·

---

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DAVIS, Circuit Judge. This is an appeal from an order of the District Court refusing to enjoin John Volpe, a minor, and the Hamersley Manufacturing Company from enforcing a judgment secured in the Supreme Court of New Jersey against the Hamersley Manufacturing Company. Volpe, 39 days under 16 years of age, while employed by the Hamersley Company sustained an injury resulting in the loss of his left arm. He secured employment by representing that he was Dominic Morriggi, who was over sixteen years of age, and whose "birth certificate and employment papers" he produced to secure the employment. Volpe worked on a printing press, and it was unlawful to employ any one under 16 years on this character of work "after seven o'clock in the afternoon or before seven o'clock in the morning of any day." P. L. N. J. 1914, pp. 524, 528. He was injured at 9 o'clock at night while working. After the injury the Hamersley Company for the first time discovered the identity of Volpe, who made claim for compensation under the Workmen's Compensation Act of New Jersey, 1911 (P. L. 134), and the first payment thereunder was made on January 6, 1919. After this payment, John Volpe, acting for himself and by his father, Joseph Volpe, who was represented to be guardian of John, with full knowledge that the injury to John did not come within the provisions of the Employers' Liability Act of New Jersey, *agreed with the complainant* to accept in satisfaction of the claim and in settlement of any cause of action which John might have against the complainant, at common law or otherwise, the same compensation which would have been allowed to him under the New Jersey Compensation Act, if it had been applicable. Compensation was accordingly made in biweekly payments until February 14, 1920, $469.80 in all being paid.

On March 20, 1920, Volpe refused to accept further money under the agreement, and brought suit against the Hamersley Company in the Supreme Court of New Jersey, and secured a verdict of $15,000 damages, which was reduced on appeal to the Court of Errors and Appeals to $10,000. 115 Atl. 665. Thereupon the complainant filed on the equity side of the District Court its complaint, wherein it set out the facts and misrepresentations by means of which Volpe secured employment with the Hamersley Company, inducing it to assume a liability not contemplated by the contract of employment, and thus working a fraud upon it. On the theory that the defendant Volpe was bound in equity to accept the compensation agreed upon, and that complainant was liable for the payment of the judgment thus obtained because of a policy of insurance issued by it to the Hamersley Company on February 1, 1918, whereby it undertook and agreed to indemnify and insure that company against loss and damage by reason of accidents occurring on its premises, it prayed that John Volpe, his guardians, attorneys, etc., be enjoined from collecting, assigning, disposing of, or from proceeding with execution on the $10,000 judgment. The injunction was refused, and bill dismissed, and complainant appealed to this court.

[1-3] The complainant at the argument pressed upon us with great earnestness that the agreement between it and Volpe was duly and de-

liberately entered into, and its performance in good faith undertaken and partly executed, and that, while it was unconscionable for defendant to ignore the agreement and prosecute his common-law right of action, the defense of accord and satisfaction was not available in the Supreme Court. The contention by defendant that complainant's rights were foreclosed by the judgment in the Supreme Court should be sustained if the jurisdiction of the court was complete. But it was not complete, for the defense of accord and satisfaction is not available in a court of law when the accord is unexecuted or only partly executed. Line and Nelson v. Nelson and Smalley, 38 N. J. Law, 358, 362; Stone v. Todd, 49 N. J. Law, 274, 281, 8 Atl. 300; Volpe v. Hamersley Manufacturing Co. (N. J. Err. & App.) 115 Atl. 665. But the defense of an executory accord is good in equity if the agreement is lawful at its inception. Headley v. Leavitt, 65 N. J. Eq. 748, 754, 55 Atl. 731; Trenton Street Railway Co. v. Lawlor, 74 N. J. Eq. 828, 832, 71 Atl. 234, 74 Atl. 668. Consequently the contention that accord and satisfaction was passed upon in the New Jersey state courts cannot prevail because that defense was not open to defendant.

[4] The defendant contends that the District Court has no jurisdiction to enjoin proceedings in the state court unless they involved rights secured by the Constitution, the laws of the United States, or are unconscionable, none of which, it alleges, was present in this case. Section 265 of the Judicial Code (Comp. St. § 1242) provides that:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

Where the elements of federal and equity jurisdiction are present this provision of the Judicial Code, which has been in force for more than a century, does not prevent federal courts from enjoining proceedings: (1) To enforce local statutes which are repugnant to the Constitution of the United States, Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, Ann. Cas. 1917B, 283; Missouri v. Chicago, Burlington & Quincy Railroad Co., 241 U. S. 533, 538, 543, 36 Sup. Ct. 715, 60 L. Ed. 1148; (2) to maintain and protect their own jurisdiction, properly acquired and still subsisting, by enjoining attempts to frustrate, defeat, or impair it through proceedings in state courts, French v. Hay, 89 U. S. (22 Wall.) 250, 22 L. Ed. 857; Julian v. Central Trust Co., 193 U. S. 93, 112, 24 Sup. Ct. 399, 48 L. Ed. 629; Chesapeake & Ohio Railway Co. v. McCabe, 213 U. S. 207, 219, 29 Sup. Ct. 430, 53 L. Ed. 765; Looney v. Eastern Texas R. R. Co., 247 U. S. 214, 221, 38 Sup. Ct. 460, 62 L. Ed. 1084; or (3) to deprive a party, by means of an injunction, of the benefit of a judgment obtained in a state court under circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience, Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870; Ex parte Simon, 208 U. S. 144, 28 Sup. Ct. 238, 52 L. Ed. 429; Simon v. Southern Ry. Co., 236 U. S. 115,

35 Sup. Ct. 255, 59 L. Ed. 492; Public Service Co. v. Corboy, 250 U. S. 153, 160, 39 Sup. Ct. 440, 63 L. Ed. 905.

Complainant maintains that this case comes under the third division above enumerated, and it is directly controlled by the cases of Headley v. Leavitt, supra; Trenton Railway Co. v. Lawlor, supra, and Wells Fargo & Co. v. Taylor, 247 U. S. 175, 38 Sup. Ct. 581, 62 L. Ed. 1244. Unless the case sub judice can be distinguished from these cases, the decree of the District Court must be reversed and the defendants enjoined.

The New Jersey cases differ from the case at bar, in that the agreement on which the proceedings in the state courts were based was made directly by defendant with complainant to extinguish the common-law right of action which defendant had directly against complainant, while in the case at bar Volpe had no common-law right of action against the complainant which is liable, if liable at all, on a policy of insurance issued by it to the Hamersley Manufacturing Company, to which Volpe was in no way a party. But in the case of Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 Sup. Ct. 93, 65 L. Ed. 205, the facts are almost identical with those involved in the case under consideration. In that case Wells Fargo & Co., hereafter called the express company, and the St. Louis & San Francisco Railroad Company, called the railroad company, entered into an agreement wherein the railroad company agreed to transport by suitable cars provided by it and attached to its passenger trains all express matter of the express company and the messengers accompanying the same, and the express company to indemnify and hold harmless the railroad company in respect to all claims for damages suffered by such agents and employees (of the express company) while engaged in the transportation of express matter on the trains of the railroad company. The messenger, Taylor, entered into a separate agreement, called a messenger's agreement, with the express company, wherein it was stipulated as a term or condition of his employment that neither the express company nor the railroad company should, under any circumstances or in any case, be liable for any injury which he might receive while on the railroad company's trains as messenger, whether caused by negligence of the railroad company or otherwise, and that he would assume all and every risk incidental to such employment, from whatever cause arising. Taylor was injured while riding in one of the cars of the railroad company, and brought suit against that company and obtained a judgment for $4,000 damages. The express company filed a bill in the United States District Court for the Northern District of Mississippi, based upon diversity of citizenship to restrain Taylor from enforcing the judgment. That court enjoined the enforcement of the judgment, which was reversed by the Circuit Court of Appeals, but affirmed by the United States Supreme Court on the ground that Taylor in violation of his agreement wrongfully sought and obtained against the railroad company a judgment which, as between the two companies, the express company was bound to pay, and since he was financially irresponsible that company in equity and good conscience was entitled to a decree holding him to his agreement and depriving him of his in-

equitable advantage. There are, however, two points wherein the instant case radically differs from the Wells Fargo & Co. Case.

[5] In the cases of Headley v. Leavitt, Trenton Railway Co. v. Lawlor, and Wells Fargo & Co. v. Taylor, it is particularly stated in the opinions that the agreements sought to be enforced were legal in their inception, "valid and binding contracts." In the Supreme Court of New Jersey, it was not alleged by the Hamersley Company that Joseph Volpe was the guardian of John Volpe. Neither did the complainant allege it to be a fact when it filed the complaint in the District Court. But after complaint was "amended by order of Judge Bodine," it averred that at the time the agreement was made, Joseph Volpe was "represented," to be guardian of John Volpe. That is not an allegation that Joseph Volpe was as a fact guardian of John Volpe. Nowhere in its brief filed in this court does complainant say that the father who made the agreement to accept compensation was guardian of the son, John Volpe, but argues, if he were not guardian, "still the minor is bound in equity by estoppel and fraud." Whether or not Joseph Volpe was guardian of his son, John, was easily ascertainable; and, since during this entire litigation it has not anywhere been alleged that he was in fact his guardian, we have no right to assume that he was, and so conclude that he was not.

The loss of the arm by the minor, aside from the loss of wages occasioned thereby during his minority, to which his father was entitled, Young v. Sterling Leather Works, 91 N. J. Law, 289, 294, 102 Atl. 395, was a loss personal to him, and was a property right, but a property right of which he himself could not dispose, Schenk v. Strong, 4 N. J. Law, 87. A minor can neither make nor affirm a contract of this character during his minority, and the "next friend," in the case sub judice acting for the minor has disaffirmed the agreement with the Hamersley Company. Sanger et al. v. Hibbard et al., 104 Fed. 455, 43 C. C. A. 635. In order that a minor, without experience and unaccustomed to business transactions, may not be deceived and imposed upon, the law has thrown around him a disability, and since he cannot act for himself "it is right * * * that some one should be *authorized* in his behalf to compound and settle with his debtor a claim made on account of his estate" and a guardian, who stands in the position of trustee relative to his ward's estate, is the proper person to act for him. Ordinary v. Dean, 44 N. J. Law, 64, 67; Lowery's Estate, 9 Pa. Co. Ct. R. 88; Maclay v. Equitable Life Assurance Society, 152 U. S. 499, 503, 14 Sup. Ct. 678, 38 L. Ed. 528. The father, as the natural guardian of the person of his child, during infancy, has, by virtue of such relationship, no authority whatever to exercise any control over the estate of the minor. He cannot release or compromise a suit prosecuted on behalf of the minor. In order to compromise a claim of his minor child, he must have the sanction of some tribunal, since he has control of the minor's person only. Isaacs v. Boyd, 5 Port. (Ala.) 388; Miles v. Kaigler, 18 Tenn. (10 Yerg.) 10, 30 Am. Dec. 425; De Cordova v. Korte, 7 N. M. 678, 41 Pac. 526; Naeglin v. De Cordoba, 171 U. S. 638, 19 Sup. Ct. 35, 43 L. Ed. 315. Natural guardianship confers no right to intermeddle with the property of the infant, but is a mere per-

sonal right in the father or other ancestor 'to the custody of the person of his heir apparent or presumptive until attaining 21 years of age. Lewis' Blackstone, Vol. 1, § 461, note 4; Woerner's American Law of Guardianship, p. 55. In New Jersey there is no statute giving the father authority by virtue of his natural guardianship to release his minor son's claim against a tort-feasor. That being so, his authority remains just as it was at common law. Naeglin v. De Cordoba, supra.

The validity and binding force of the agreements in the cases of Headley v. Leavitt, Trenton Railway Co. v. Lawlor, and Wells Fargo & Co. v. Taylor, supra, were the grounds upon which equitable relief was based. The complainant, which is asking affirmative equitable action, has not borne the burden of establishing the validity of the agreement which it is seeking to enforce.

[5] Again there was no question in those cases but that the complainant was liable to pay the judgment from whose unconscionable enforcement it was seeking equitable relief. In the Leavitt and Lawlor Cases the judgment was recovered against the complainants themselves, but in the Wells Fargo Case the judgment was obtained against the railroad company, but "as between the two companies the express company was bound to pay." In the case at bar the complainant nowhere alleges that it is liable to pay the judgment. It avers that—

"Complainant by a certain policy of insurance * * * undertook and agreed to indemnify and insure the said defendant, Hamersley Manufacturing Company, from loss and damage by reason of accidents occurring on the premises of and in the business of the said Hamersley Manufacturing Company."

It further avers that the "Hamersley Manufacturing Company has threatened to sue this complainant upon the said policy of insurance."

It should be noted that the judgment was secured against "Hamersley Manufacturing Company, a corporation," while the policy of insurance was issued to "The Hammerschlag Mfg. Co." Whether or not they are one and the same company, or whether they are two separate entities having some connection or no connection, or whether the two names are a mere inadvertence, the record does not disclose. Be that as it may, the liability of the complainant is determined by the obligations assumed in the policy which provides that:

"This policy of insurance witnesseth that the company does hereby agree to pay the compensation and to furnish the medical and hospital services and medicines provided for by the New Jersey Workmen's Compensation Act, namely chapter 95, Laws of 1911, as amended by chapter 174, Laws of 1913 and chapter 244, Laws of 1914, or any Laws in amendment thereof, to any person or persons to whom such compensation or services shall become due for or on account of personal injuries, including death resulting at any time therefrom, received or suffered by any employee or employees of the insured within the policy term, subject, however, to the agreements on the following pages."

The "compensation," therefore, which it agreed to furnish was that "provided by the New Jersey Workmen's Compensation Act." This fact is also referred to in the "agreements" attached to the policy:

"Any notice given by the insured, or a true copy of any notice given by an employee to commence, terminate or renew the operation of any section of the Workmen's Compensation Law, shall be forwarded to the company."

"This policy will cover only such medical and hospital services and medicines as defined in section 2, paragraph 14, of the Workmen's Compensation Law if furnished by the employer and not refused by the employee."

It has been definitely and finally determined by the Court of Errors and Appeals, the court of last resort in New Jersey, that the case of John Volpe v. Hamersley Manufacturing Co., 115 Atl. 665, does not come within the provisions of the Workmen's Compensation Act. That case is in harmony with the law in other states generally, as Mr. Justice Black has shown in his able opinion in the case of Feir v. Weil and Whitehead, 92 N. J. Law, 610, 106 Atl. 402, in which he collected and carefully considered the leading cases on the subject. He also held that the contention of the complainant that the doctrine of equitable estoppel is applicable to this case cannot be maintained, for the reason that "the Legislature under its police power has said there shall be no valid contract" in this class of cases. Krutlies v. Bull's Head Coal Co., 249 Pa. 162, 169, 94 Atl. 459, L. R. A. 1915F, 1082; Berdos v. Tremont, etc., Mills, 209 Mass. 489, 95 N. E. 876, Ann. Cas. 1912B, 797. It may be true, as the complainant alleges, that it undertook and agreed to indemnify the insured from loss by reason of accidents occurring on the premises of the "Hamersley Manufacturing Company" or the "Hammerschlag Mfg. Co.," but that indemnity was for compensation provided by the Workmen's Compensation Act and no other. It may also be true that the Hamersley Manufacturing Company has threatened to sue complainant, but these are not allegations or admissions that complainant is liable for the judgment obtained by Volpe against the Hamersley Manufacturing Company, and if such allegation had been made, it remains, so far as the evidence in this case goes, unsupported.

To repeat, it is nowhere alleged or admitted and not disclosed by the evidence that either Joseph Volpe was guardian, appointed by a competent tribunal, of his minor son, or that complainant is liable for the judgment obtained against the Hamersley Company. For the purposes of injunctive relief sought in this suit, complainant has not established to our satisfaction two necessary facts—that the agreement made by the minor and his father was valid and binding upon the minor, and that complainant is liable to pay the judgment obtained against the Hamersley Company. We confine our decision strictly to the disclosures of this case, without in any way intending to render a final judgment upon those questions under other pleading and evidence.

The judgment of the District Court is affirmed.