19 N.J. Super. 482 (1952)
88 A.2d 643
ANNA CERRIA, PLAINTIFF-APPELLANT,
v.
CHARLES DE FAZIO, JR., AS EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF FELICE CERRA, ALSO KNOWN AS FELICE CERRIA, DECEASED, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1952.
Decided May 14, 1952.
*483 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. Anthony P. LaPorta argued the cause for appellant.
Mr. Samuel J. Davidson argued the cause for respondent (Messrs. DeFazio, Davidson & DeFazio, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff appeals from a judgment of dismissal entered on defendant's motion made at the close of plaintiff's case. Defendant is the executor of the estate of Felice Cerria. The complaint is in two counts, the first seeking judgment of $10,000 for services rendered plaintiff's father-in-law and mother-in-law, Felice Cerria and Maria Cerria, in their lifetimes, and the second $440 for monies spent for special foods, brandy and doctor bills for Felice Cerria.
There was no proof of any specific out-of-pocket expenditures made by plaintiff on Felice Cerria's behalf. The second count was properly dismissed. However, the judgment of dismissal must be reversed as to the first count.
The County Court considered the first count as in effect setting up two causes of action, one based on an agreement to compensate plaintiff for her services by leaving her a share of real estate by will, and the second based on a quantum meruit. Although the first count refers to a promise to pay plaintiff by devising a share of property to her and her husband, it is cast in the mold of quantum meruit. If it is to be sustained, at least for the purposes of this appeal, it must be on that theory.
The testimony establishes that soon after her marriage in September, 1933 to Frank Cerria, son of Felice, plaintiff *484 began going to the apartment of her in-laws where she did the housework, shopped for the couple, cooked their meals and acted as their practical nurse. The mother-in-law was then 60 years old, a heavy woman and suffering from longseated asthma which became progressively debilitating. The father-in-law was 64, weighed 240 pounds, and suffered from rheumatism. In 1947 he developed heart trouble and then dropsy. Plaintiff went to their home daily, leaving her own place in the morning and caring for them and their needs through the day. She tended them until February 1, 1948, when the mother-in-law said she no longer needed her services. Maria Cerria died soon after, on June 15, 1948, There was some evidence tending to show that plaintiff took care of the father-in-law for some months after he was confined to bed and preceding his death on January 21, 1951.
Proof of plaintiff's services is found in the testimony of her husband Frank, her son Philip, and a friend Mazie Tronolone, who visited the in-laws' residence frequently. The physician who attended Felice Cerria after he had his heart attack in April, 1947, testified that he had recommended the need of a practical nurse and that the patient suggested plaintiff who had been very attentive to him up to that time. The doctor saw no one but plaintiff in the Cerria home on his visits there down to October, 1949.
Plaintiff's son testified that on many occasions Felice Cerria had said in his mother's presence that she had been good to him and his wife and when they died he would leave her a share of his property, and that plaintiff had said "All right." Mazie Tronolone's testimony was to the same effect; the father-in-law had several times said in plaintiff's presence that he would leave her and his son a share for the good done to him and his wife Maria. To his son Frank decedent said: "What are you worrying about? When I die I am going to leave a will for your wife for the work she is doing. I am going to leave you a share in the property." On another occasion he said: "I haven't got the money, but I will take care of you and your wife in the will."
*485 By his last will, dated January 8, 1951, Felice Cerria left nothing to plaintiff, one dollar to his son Frank (her husband), and the residue of the estate to his daughter Angelina. The residue expressly included his Hoboken home, which he and his wife Maria had owned by the entirety. It was the only real property of which he died seized.
Defendant in his answer contends that (1) since plaintiff was a daughter-in-law, any services rendered decedent and his wife were rendered without expectation of compensation and solely for their mutual comfort and convenience, and (2) any services furnished were furnished gratuitously. The proofs fail to sustain the argument.
A similar contention was advanced in Stone v. Todd, 49 N.J.L. 274 (Sup. Ct. 1887), where the decedent's brothers and sisters sought to defeat the plaintiff housekeeper's claim for services, claiming she had rendered them on the mere expectation of a legacy. The court said (at pages 280-281):
"But in ordinary cases the law will raise the presumption of a promise to pay from the mere fact of service, and it will prevail unless a contrary intention and understanding of the parties be shown. In this case the plaintiff came into the employment of the decedent as a stranger, and as his housekeeper. She performed valuable and meritorious services for many years, both in keeping his house and assisting him in farming work. * * * He expressed to others, in her presence, his gratitude for her kindness and faithfulness, and his purpose to pay her for them. The mere fact that he intended to make a liberal provision for her by will, and so stated, will not defeat her recovery when he failed or neglected so to do. If it was their understanding that she should be paid, the intended will was but the method of paying an existing and admitted obligation to compensate for the services rendered, and if he failed to pay in the manner indicated, the plaintiff is entitled to recover, as a creditor, for the value of her services. * * * There is nothing in the proofs to show that the services were gratuitous, while the presumption from the services rendered, and the acts and words of the decedent, repel the inference that she was not to be paid."
The leading case of Disbrow v. Durand, 54 N.J.L. 343, 345 (E. & A. 1892), similarly held that "Ordinarily, where services are rendered and voluntarily accepted, the law will imply a promise upon the part of the recipient to pay for *486 them; * * *" However, the court affirmed the non-suit against the plaintiff. She was a sister of defendant's decedent and had lived with her brother and served him for more than 20 years preceding his death. The Chancellor there held (at page 345):
"* * * where the services are rendered by members of a family, living as one household, to each other, there will be no such implication from the mere rendition and acceptance of the services. In order to recover for the services, the plaintiff must affirmatively show, either that an express contract for the remuneration existed, or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation." (Italics ours.)
The "one immediate family" arrangement to which the Disbrow case referred as the basis for the exception to the ordinary rule of an implied promise to pay for services rendered, does not exist here. Plaintiff, her husband and two children never lived with her in-laws but always had a home of their own, independent of and away from the Felice Cerria household; she was never a member of that household and never received support from her in-laws, but was exclusively supported by her husband, Frank Cerria. Since plaintiff was not a member of the same household as her in-laws, no presumption arises that the services rendered them were gratuitous.
In Schmetzer v. Broegler, 92 N.J.L. 88 (Sup. Ct. 1918), plaintiff sued for (among other things) the reasonable value of housekeeper's services rendered decedent in his lifetime. Justice Parker there said (at page 90):
"It is not pretended that the services were voluntarily rendered as by a member of the household and without any promise to pay for them; on the contrary, all the evidence on the subject points to admissions made by the deceased more than once in the presence of outside witnesses that plaintiff was entitled to be paid for the services that she was rendering, and that she would be paid for them some time. If so, she had a claim clearly enforceable at law after his death unless it was satisfied by the legacy in question."
*487 Anderson v. Searles, 93 N.J.L. 227 (E. & A. 1919) presents a situation akin to the one here under consideration, although one that at first blush is apparently more favorable to defendant's claim of gratuitous services because the plaintiff there grew up and remained in her granduncle's home. She nursed his ill wife and did the housework; after the wife died she cared for the granduncle for five years. The evidence was that he had told others he would do the right thing by her and would leave her a third of his estate. His will gave her $200. Plaintiff sued his executors on (1) an express contract and (2) quantum meruit. There was a non-suit at the close of her case. In reversing, the Court of Errors and Appeals held (at pages 229-230):
"The court, however, erred in ordering a nonsuit, in view of the situation `that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation.' Disbrow v. Durand, 54 N.J.L. 343. * * * From all this it was open for the jury to find that the testator expected and intended to compensate the plaintiff for her services, and that the plaintiff remained in the testator's household and performed the services in the expectation that she was to be reasonably compensated therefor."
On a motion for judgment of dismissal made at the close of plaintiff's case, as on a motion for non-suit under the old practice, the court must take as true all evidence which supports the view of the plaintiff and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. In the light of the testimony adduced, the court below should have let the case go to the jury. Anderson v. Searles, above; 58 Am. Jur., Work and Labor, § 63, p. 560. In Steffler v. Schroeder, 12 N.J. Super. 243, 247 (App. Div. 1951) the court held:
"Whether services are rendered upon an express or implied promise that compensation will be made therefor, or are performed gratuitously with a hope of receiving a legacy from the person for whom the services are rendered, is a question to be submitted to the jury when the testimony leaves the matter in dispute. * * *
In the present case, there was ample testimony for the jury to *488 find that the plaintiff, not being a member of decedent's family, rendered services to decedent with the mutual understanding that the plaintiff would be compensated for such services by a provision therefor in decedent's will."
Defendant contends that plaintiff's proofs were insufficient to establish a basis for the reasonable value of her services to the decedent. The County Court judge was in agreement. There was testimony as to their value upon which the jury, if it found for plaintiff, could have based its verdict. Mrs. Tronolone, a housewife, testified, without objection raised, that she had done housework for about six or seven months for a certain person and received one dollar an hour, and that she was paid "according to what the standard wages were." She also worked for a relative and received 75 cents an hour for a week. Plaintiff's services were not specialized ones, demanding particular skills. Mrs. Tronolone's figures could well serve the jury as an index to the value of the work plaintiff did. Cf. Steffler v. Schroeder, 12 N.J. Super. 243, 247-248 (App. Div. 1951) where the same contention was made by defendant as here. And see 58 Am. Jur., Work and Labor, § 10, p. 518; § 63, p. 560.
Defendant puts some stress on the fact that in 1947 plaintiff was a witness to the wills of decedent and his wife, that neither made any provision for her, and that plaintiff made no complaint or claim until after decedent died. There is nothing in the evidence to show that she read the wills or knew their contents. Plaintiff did not testify because of defendant's objection, properly made, that she could not tell of her transactions or conversations with the testator.
The judgment will be reversed as to the first count and affirmed as to the second count.