UNITED STATES v. RUBIN et al.

(District Court, D. Connecticut.   October 27, 1914.)

No. 247.

1. INDICTMENT AND INFORMATION (§ 140*)—MOTION TO QUASH—GROUNDS— ILLEGAL TESTIMONY.

On a motion to quash an indictment, because hearsay and incompetent testimony was introduced before the grand jury, it is not necessary to show that the grand jury was influenced by such testimony to find the indictment.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 474, 475, 478; Dec. Dig. § 140.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. INDICTMENT AND INFORMATION (§ 10\*)—INVESTIGATION BY GRAND JURY—RECEIPT OF EVIDENCE—CHARACTER OF EVIDENCE.**

It is improper for a grand jury, in investigating an alleged offense, to receive hearsay testimony, and an indictment founded thereon is invalid.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. 50–61; Dec. Dig. § 10.\*]

**3. ATTORNEY AND CLIENT (§ 32\*)—PRIVATE ATTORNEYS—PROFESSIONAL INVESTIGATORS.**

Private attorneys should not act as detectives and professional investigators, and thus prepare themselves as alleged competent witnesses in judicial investigations to accomplishing any desired result.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 45; Dec. Dig. § 32.\*]

**4. GRAND JURY (§ 34\*)—SESSIONS—PERSONS ENTITLED TO ATTEND—STENOGRAPHERS—"ATTORNEY AT LAW ESPECIALLY APPOINTED."**

Act Cong. June 30, 1906, c. 3935, 34 Stat. 816, provides that the Attorney General, or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General, may, when specially directed by the Attorney General, conduct any kind of legal proceedings, civil or criminal, including grand jury proceedings, which district attorneys now or hereafter may be by law authorized to conduct. *Held*, that a stenographer for the United States district attorney, duly appointed and sworn, was not an attorney at law specially appointed by the Attorney General, under any provision of law, and hence was improperly permitted to attend sessions of the grand jury at which indictments were found, and to take down the testimony of witnesses before such grand jury, for the information of the district attorney.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 73, 85; Dec. Dig. § 34.\*]

Philip Rubin and others were indicted for conspiracy to conceal the assets of a bankrupt, and they move to quash the indictment. Sustained.

See, also, 214 Fed. 507.

Frederick A. Scott, U. S. Dist. Atty., of Hartford, Conn.

Benjamin Slade, of New Haven, Conn., Edward Seery, of Waterbury, Conn., and Alfred Frankenthaler and Max Monfried, both of New York City, for all defendants except Rubin and Glickman.

William Kennedy, of Naugatuck, Conn., for Rubin.

THOMAS, District Judge. The grand jury found an indictment against the defendant Philip Rubin and nine others, charging them with a conspiracy to conceal the assets of a bankrupt, which offense is claimed to be covered by section 37 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [U. S. Comp. St. 1913, § 10201]) and section 29b (1) of the Bankruptcy Act approved July 1, 1898 (30 Stat. 554, c. 541 [U. S. Comp. St. 1913, § 9613]). Motions in behalf of all defendants, represented by various attorneys (excepting defendant Louis Glickman), were made for an order of court to inspect the minutes of the grand jury, which motion this court denied. 214 Fed. 507.

In support of the above motions the moving defendants filed affidavits which alleged certain facts as a basis for the granting of said motions. Pursuant to the suggestion of the court made in denying

the above motions, the district attorney has filed an answer to the allegations contained in those motions, thus raising an issue of fact. After the denial of the motions and within the time allowed by law the same defendants filed a plea in abatement, a motion to quash, and a motion to dismiss the indictment, and in support of said plea and motions rely upon the facts set out in the moving papers and additional facts set out in the motion to quash. Evidence was offered to prove the facts thus alleged.

From the pleadings, the evidence and statements of counsel it appears that an agent from the Department of Justice was assigned to investigate the transactions which preceded the filing of the petition in bankruptcy and upon which the indictment is founded. This agent investigated the various transactions which led up to the bankruptcy proceedings, and this work took him into various cities in New York and Connecticut, where he examined various memoranda and persons other than the accused. When the grand jury was in session this agent appeared before it and testified generally with reference to the alleged facts which he learned as aforesaid in the course of his investigation, much of which was hearsay testimony. His examination disclosed the fact that he had no personal knowledge of many of the facts pertaining to the subject-matter under investigation, yet he testified before the grand jury, giving it such information as he had received as the result of his investigations. Upon this feature of the case the defendants move to quash the indictment, on the ground that it was obtained, in part at least, as the result of incompetent testimony given before the grand jury.

Upon this proposition the federal decisions are not entirely uniform. One line of decisions seems to hold that the court has no power to review the proceedings before the grand jury for the purpose of ascertaining whether competent evidence was presented to it, and that if it had such power it would result in a rehearing of the whole proceedings before it, and that it would be difficult to find an indictment in any case under such conditions. These decisions further hold that it is immaterial that hearsay or incompetent evidence was presented, unless it be shown that the indictment was founded upon that testimony to the exclusion of testimony which was relevant and competent, and in order to ascertain that fact all grand jurors would have to be summoned before the court to determine which of the two kinds of testimony influenced them to find a true bill against a defendant, which on its face is impractical.

[1] There is another line of federal decisions which hold that it is not necessary to show that the grand jury was influenced by hearsay and incompetent testimony to find an indictment; that the policy of the law is to protect the individual against any invasion of his rights, and that when the law says there shall be no invasion of those rights, who shall say, or assume to say, where the line shall be drawn, and where the end must be as to who shall be in the grand jury room at its session, when considering the testimony touching a proposed indictment, or what kind of testimony shall be considered by the grand jury.

Mr. Justice Field, in a charge to the grand jury of the Circuit Court of the United States for the District of California at a term of court held at San Francisco on the 26th of August, 1872, said in part:

"The government has appointed the district attorney to represent its interest in the prosecution of parties charged with the commission of public offenses against the laws of the United States. He will, therefore, appear before you, and present the accusations which the government may desire to have considered by you. He will point out to you the laws which the government deems to have been violated, and will subpœna for your examination such witnesses as he may consider important, and also such other witnesses as you may direct.

"In your investigations you will receive only legal evidence, to the exclusion of mere reports, suspicions, and hearsay evidence. Subject to this qualification, you will receive all the evidence presented which may throw light upon the matter under consideration, whether it tend to establish the innocence or the guilt of the accused."

[2] This general proposition of law relating to the kind and character of evidence proper for consideration by the grand jury has been generally followed in the better considered cases in the federal courts. Under this rule hearsay evidence is improper, and an indictment founded upon it is invalid. In denying the defendants' motion for an inspection of the grand jury minutes, this court took occasion to say (214 Fed. 507, on page 508):

"The complete protection of the rights of citizens must necessarily commence and does commence at the inception of any criminal proceeding. * * * These reasons are sufficient to sustain the doctrine that the grand jury is forbidden to make an accusation against a person without legal evidence to support it."

In Jacob Sharp's Case, 107 N. Y. 476, 14 N. E. 348, 1 Am. St. Rep. 851, the court, through Judge Peckham (later of the Supreme Court of the United States), said:

"That law must protect all who come within its sphere, whether the person who invokes its protection seems to be sorely pressed by the weight of the inculpatory evidence in the case or not. It cannot alter, for the purpose of securing the conviction of one who may be called or regarded as a great criminal, and yet be invoked for the purpose of sheltering an innocent man. In the eye of the law all are innocent until convicted in accordance with the forms of law and by a close adherence to its rules."

With this doctrine I am in accord. The evidence before me further disclosed the fact that one John M. Sweeney, a lawyer who was acting as attorney for a certain bank, which was a creditor of the bankrupt, accompanied the agent of the Department of Justice and assisted in procuring further information of a hearsay character. Said Sweeney also appeared and testified before the grand jury that found the indictment now under consideration. While it did not appear, and, of course, it could with difficulty even be shown, that any harm resulted to these defendants from the hearsay testimony of these witnesses, yet I cannot approve of this method employed before a grand jury.

[3] Private attorneys should not act as detectives and professional investigators, and thus prepare themselves as alleged competent witnesses in judicial investigations, for the purpose of accomplishing any

desired result. The possibility of resulting injury to a defendant is too great, and is not in accord with the better considered federal decisions. U. S. v. Farrington (D. C.) 5 Fed. 343. In U. S. v. Kilpatrick (D. C.) 16 Fed. 765, on page 768, the court said:

"The grand jury is an institution that had its origin in the early periods of the common law. It has always been highly estimated and venerated in England and in this country, as it has been considered as a safeguard of the liberties of the people against the encroachments and oppressions of political power, and against unfounded accusations prompted by private malice, personal animosity, or other improper motives."

Again on page 771 the court said:

"Investigations before grand juries must be made in accordance with the well-established rules of evidence, and they must have the best legal proof of which the case admits. In this respect they are judicial tribunals. The prosecuting officer is presumed to be familiar with the rules of evidence, and it is his duty to take care that no evidence is received by the grand jury which would not be admissible in a court upon the trial of a cause. 1 Whart. Crim. Law, § 493."

Along the same lines the court further says on page 777:

"It is all-important to the best interests of the government and of society that willful offenders should be speedily tried and punished, but it is equally important that the citizen should not be deprived of those guaranties which the law affords for securing his personal rights and liberties. Perhaps the most important protection to personal liberty consists in the mode of trial which is secured to every person accused of crime. From its initiation until guilt is established beyond a reasonable doubt by the verdict of a jury, a trial is surrounded by certain safeguards which the government cannot dispense with. Cooley, Const. Lim. 309. Courts cannot administer justice unless they enforce the well-settled principles and observe the due forms of law. Any other mode of trial would be a mockery of justice and judicial oppression, and would soon render courts objects of public distrust and aversion."

[4] It also appeared from the allegations in the motion, from the evidence, and from statements of counsel that a stenographer was present in the grand jury room and took shorthand notes of the testimony given before it by the various witnesses. In this connection the defendants allege:

"That at the sitting of said grand jury, and while they were considering said complaint recited in the indictment, and while it was hearing testimony concerning the same, there was present in said grand jury room and within the hearing of what transpired and listening to what was said, with the consent of the district attorney, a person who was not an attorney or representative of the government, nor a witness in said cause, nor was such person authorized by law to be in said grand jury room at said time."

With reference to this allegation the answer of the government is as follows:

"The allegations contained in paragraph 3 of said motion are denied, except that it is admitted that a stenographer for the United States district attorney, duly appointed and sworn, was present at the sitting of said grand jury."

If there could be any doubt about the first reason for granting the defendants' motion, it seems to me that the second reason is con-

clusive, in view of the statutes and the decisions of the federal courts touching this matter.

Act June 30, 1906, c. 3935, 34 Stat. 816, provides:

"That the Attorney General, or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys now are or hereafter may be by law authorized to conduct, whether or not be or they be residents of the district in which such proceeding is brought."

I find that this stenographer was not an attorney at law specially appointed by the Attorney General under any provision of law.

After a careful consideration of the cases of U. S. v. Edgerton (D. C.) 80 Fed. 374, U. S. v. Rosenthal (C. C.) 121 Fed. 863, and U. S. v. Heinze (C. C.) 177 Fed. 770, where the present question was fully discussed and various decisions commented upon, further discussion to sustain defendants' contention seems only cumulative.

In the Edgerton Case it was well stated on page 375, where the court said:

"It is beyond question that no person, other than a witness undergoing examination, and the attorney for the government, can be present during the sessions of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. The cases where bailiffs and stenographers have on occasions been temporarily present in the grand jury room are only apparent exceptions. The rule, in its spirit and purpose, admits of no exception. * * * If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury?"

The general rule was discussed at length in U. S. v. Rosenthal, 121 Fed. 862, and the Edgerton Case cited with approval.

In the recent case of U. S. v. Heinze, 177 Fed. 770, decided in this circuit and under the act of June 30, 1906, above quoted, Judge Hough, in sustaining the same doctrine, referred to the act and said, on page 773:

"It is in my judgment entirely clear that the intent of the act of 1906 was plainly not to authorize the introduction into the grand jury room of previously unauthorized laymen, but to enlarge the number of office-holding lawyers who might attend before the jury to render assistance in matters of law alone."

The learned district attorney relies upon U. S. v. Simmons (C. C.) 46 Fed. 65, decided in 1891, to sustain his contention upon this point, but at the time that case was decided the act of 1906 was not in force, and, of course, no construction could be placed upon it.

In view of the decision of the court in the Heinze Case, I am constrained to grant the motions to quash the indictment.