DEBORAH O. ANDERSON, APPELLANT, v. IDA E. SEARLES
ET AL., EXECUTORS, &c., RESPONDENTS.

Submitted March 24, 1919—Decided June 20, 1919.

A communication, made by a client to an attorney, concerning the
drafting of a will for the client, is a privileged communication
which continues after the death of the client, and the privilege
is not waived by the fact that the attorney was one of the sub-
scribing witnesses to the will.

On appeal from the Supreme Court.

For the appellant, *Bleakly & Stockwell.*

For the respondent, *John F. Harned* and *Lewis Starr.*

The opinion of the court was delivered by

KALISCH, J. The appellant appeals from a judgment of
nonsuit ordered against her. She sued the defendants in the
court below, as evidenced by her complaint on a twofold
theory—*first,* that she was entitled to recover the sum of $8,-
000 from the estate of William H. Bishop, deceased, on an ex-
press contract alleged to have been made by the defendants'
testator, in his lifetime, with the plaintiff, to the effect that
if she would act as nurse and housekeeper for him and his
wife, he would give the plaintiff by his will $500 cash and
certain furniture, and one-third of his estate, which third and
furniture are valued in the complaint at $7,500, and that,
though the plaintiff performed her part of the contract, the
testator failed to make such provision in his last will and
testament; *second,* that at the instance and request of the
testator she performed the duties of housekeeper for him and
his wife on an agreement made with him that he would com-
pensate her for her services, which he failed to do, and that
she was entitled to recover from the defendants such sum as
her services were reasonably worth.

The nonsuit was based upon the ground that there was no lawful evidence either of an express contract or justifying a recovery upon a *quantum meruit.*

Counsel of appellant does not claim that under the state of the evidence, at the close of the plaintiff's case, the trial judge would have been justified in submitting the case to the jury on the first count of the complaint, but his insistence is, that the trial judge erroneously excluded competent testimony offered by the plaintiff, which testimony tended to establish the contract set forth in said count and was sufficient in law and fact to present a case for the consideration of a jury.

This brings us to a consideration of the character of the testimony offered and excluded.

The record shows that the testator had made and executed two previous wills, one in 1912 and the other in 1914, which wills were revoked by a later one, made in 1916, and which appears to have been duly probated as the last will and testament of the testator; that Mr. Sloan, the testator's legal adviser, prepared the several wills from instructions received from the testator, and was a subscribing witness to the execution of them.

Counsel for plaintiff called Mr. Sloan as a witness, produced the two former wills made and executed by the testator, and a paper containing written instructions for the preparation of the wills, in the testator's handwriting, given by him to the witness, and offered to prove, by their contents and from what the testator told the witness, an agreement made by the testator with his wife at the time she conveyed her property to him, that it was upon condition that he would make provision for and "do the right thing by Deborah."

This testimony was clearly inadmissible and was properly excluded.

It was a communication made by a client to his attorney, and, therefore, was privileged. *Matthews* v. *Hoagland,* 48 *N. J. Eq.* 455, 464; *Wigm. Ev.,* § 2318; *Jones Ev.,* ¶ 750. The question is fully and ably discussed in 1 *Greenl. Ev. (Lewis ed.), ch.* 13, *pp.* 371, 372, &c., and numerous English

and American cases sustaining the text are there cited. And Wigmore, in his valuable work, section 2323, says that the privilege continues after the death of the client. And the reason for this appears to be that it would leave a client or his estate subject, indefinitely, to disclosures made by him to his attorney, and which might be used detrimentally to the client or his estate.

But the further contention is, that the rule relating to privileged communication is not applicable here because the attorney who prepared the various wills was requested by the testator to be a subscribing witness to each of them, and thereby the testator waived the attorney's privilege from testifying to conversation had with the testator at the time such wills were drawn.

To sustain this assertion counsel cites *Veazey's Case*, 80 N. J. Eq. 466. What occurred in that case was that the lawyer who drew the will simply testified to its execution according to the laws of New Jersey, and was called by the proponent of the will for that purpose. In most instances the lawyer who prepares the will becomes a subscribing witness, and it is an astounding proposition that by this act the testator waives the privilege.

In *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 528, Chancellor Walworth (at *p.* 597) said: "In the case of *Robson* v. *Kemp*, 5 Esp. N. P. 53, which was cited by the counsel for the defendants, upon the argument, to show that an attorney who becomes a subscribing witness to an instrument is bound to disclose all that took place at the time of its execution, Lord Ellenborough expressly declared that the attorney was not bound to disclose what took place in the preparation and concoction of the instrument which he witnessed, or at any other time, not connected with the execution of such instrument."

The court, however, erred in ordering a nonsuit, in view of the situation "that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation." *Disbrow* v. *Durand*, 54 N. J. L. 343.

There was testimony to the effect that after the plaintiff had grown to womanhood she remained in the home of the testator, who was her granduncle by marriage. Her grandaunt, the testator's wife, became ill and plaintiff nursed her during the illness and did the housework also. The testator's wife died in 1912, and the plaintiff continued to remain in the household of the testator, who survived his wife a little more than five years. The testator, in 1912, was seventy-seven years of age. The plaintiff's employment consisted in taking care of the heater and range, taking out the ashes, doing the kitchen work, preparing the meals, besides taking care of the testator, who suffered attacks of illness from time to time. A Mrs. Hyde testified that she heard the testator say to his wife: "I will do the right thing by Deborah; I will leave her one-third of the estate and make her one of the executors." A Mrs. Campion testified that the testator told her that the plaintiff was indispensable to him; that he had promised his wife to take care of the plaintiff, and that he had made his will leaving to the plaintiff a quarter of his estate. It appears that the plaintiff was about twenty-four years of age when the testator's wife died, and that she continued in the testator's household performing all kinds of menial work, and, at times, nursing the testator. In the probated will the testator recognizes his obligation to the plaintiff for her services and bequeaths her "two hundred dollars in consideration of her faithful services." From all this it was open for the jury to find that the testator expected and intended to compensate the plaintiff for her services, and that the plaintiff remained in the testator's household and performed the services in the expectation that she was to be reasonably compensated therefor.

The judgment is reversed and a new trial ordered.

*For affirmance*—PARKER, J.   1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.   13.