99 N.J. Super. 162 (1968)
239 A.2d 10
ENRIQUE A. ERVESUN, PLAINTIFF-APPELLANT,
v.
BANK OF NEW YORK, ETC., DEFENDANT-RESPONDENT.
MARY ELLEN BALDWIN, PLAINTIFF-APPELLANT,
v.
BANK OF NEW YORK, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1967.
Decided February 2, 1968.
*164 Before Judges KILKENNY, CARTON and CRAHAY.
Mr. Donald J. Rapson argued the cause for appellants (Messrs. Lautman & Rapson, attorneys).
Mr. Everett M. Scherer argued the cause for respondent (Messrs. Riker, Danzig, Scherer & Brown, attorneys; Mr. Peter L. Berkley on the brief).
The opinion of the court was delivered by CARTON, J.A.D.
Plaintiffs appeal pursuant to leave granted from an order of the Chancery Division denying their application for discovery.
They seek to take the depositions of certain attorneys concerning communications between them and Manuel E. Rionda and Ellen G. Rionda, both of whom are now dead, and to inspect all documents under the control of these *165 attorneys in relation to the disposition of property by the Riondas by way of will, codicil or inter vivos transaction. It should be noted, however, that since the trial court found that none of the attorneys represented Manuel Rionda, the order appealed from relates only to communication with Ellen Rionda.
The consolidated actions in furtherance of which the discovery is requested seek to impress a trust upon the assets of the estate of Ellen G. Rionda under her 1963 will. The basis of these actions is plaintiffs' contention that the Riondas made an irrevocable agreement in 1948 to make mutual and reciprocal wills according to an agreed testamentary plan. That plan called for the execution of a will by each of these leaving substantially all of his or her estate to the survivor, and gifts by the survivor to plaintiffs of certain specific items and designated percentages of the residuary estate. Plaintiff Ervesun claims his interest has a value in excess of half a million dollars; plaintiff Baldwin asserts an interest estimated at about half of that amount.
The complaints allege that Ellen's 1963 will, after the death of her husband, represented a breach of the agreement made in 1948. Defendant-executor of the 1963 will resists application for discovery, contending that the communications and evidence are privileged by virtue of the attorney-client relationship.
The facts necessary to a resolution of the issue are not in substantial dispute. Mr. and Mrs. Rionda were domiciliaries of New Jersey. They had no children. Ervesun was a cousin of Mr. Rionda and had lived frequently with the Riondas. Plaintiff Mary Ellen Baldwin is a daughter of a long-time friend of Mrs. Rionda.
On May 14 and June 2, 1948, respectively, Manuel and Ellen Rionda made wills which plaintiffs assert were in accord with the testamentary plan allegedly agreed upon.
Manuel died on February 9, 1950. Under his will executed in 1948 he bequeathed virtually his entire estate to his wife, *166 Ellen, and designated her, along with plaintiff Ervesun and one Charles R. Niedlinger, as executors. Edmund B. Hourigan, an attorney of this State, represented the estate on the probate of that will.
During the period from February 16, 1950 to April 10, 1954, Hourigan allegedly drew and attended to the execution of several wills and codicils by Ellen Rionda which plaintiffs assert followed the agreed testamentary plan. He also is said to have prepared another will dated January 22, 1957, which is said to represent the first major deviation from that plan. Between January 22, 1957 and August 1, 1963 Ellen executed several wills said to have been prepared by Hamilton F. Reeve, an Englewood attorney, which progressively departed from the testamentary plan manifested in the 1948 wills.
On August 1, 1963 Mrs. Rionda, then aged 85, executed her last will. Under that will she bequeathed the bulk of her substantial estate to a Dr. Bolton, her attending physician, and his family. She bequeathed $5,000 to Ervesun but left nothing to Baldwin. The will also provides that if any beneficiary contests the will or aids in any action to invalidate any of its provisions, he shall be deprived of the right to share in her estate.
Plaintiffs aver that Dr. Bolton referred Mrs. Rionda to both Reeve and Cummins, and that the latter attorney referred her in 1963 to the firm which prepared the last will and which represents defendant in the present actions.
All of the attorneys from whom discovery is sought by plaintiffs claim that the communications with their deceased client are privileged by virtue of the attorney-client relationship.
This well-defined privilege, with certain exceptions to it, has been long recognized in the case law of our State. It became a part of our statutory law upon the adoption of Rule 26 of the Rules of Evidence in 1960 (N.J.S. 2A:84A-20). In the present case the validity of the claim of privilege turns upon the proper interpretation to be given *167 to an exception to Rule 26. This rule, in pertinent part, provides:
"* * * [C]ommunications found by the judge to have been between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) if he is the witness to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated by the client, or (iii) as a result of a breach of the lawyer-client relationship. The privilege may be claimed by the client in person or by his lawyer, or if incompetent, by his guardian, or if deceased, by his personal representative. * * *
(2) Exceptions. Such privileges shall not extend * * * (b) to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by inter vivos transaction, * * *."
In denying plaintiffs' application for discovery the trial judge held that Rule 26 (2) (b) did not apply to the present case for the reason that plaintiffs did not "claim through the client," and therefore the communications are privileged.
We are of the opinion that the communications sought to be deposed fall within the exception and are not exempt from disclosure. Plaintiffs assert claims as beneficiaries of an agreement between Ellen G. Rionda and her husband which was evidenced by mutual and irrevocable wills setting forth the agreed testamentary pattern of distribution. They hope to establish the existence and terms of that agreement through oral and written communications between the decedent Ellen Rionda and her various attorneys. Such communications are certainly relevant and perhaps vital to the issue between the parties whether such an agreement was made. They, as well as defendant-executor and the named beneficiaries of her last will, claim through the decedent Ellen Rionda. Their claims arise out of an agreement made by Mrs. Rionda during her lifetime. That claim is not the less "through the client," Ellen Rionda, because *168 it arises by virtue of an inter vivos contract. Rule 26(2) (b) places such claims on a parity with those arising by testate or intestate succession. The communications in question would therefore appear to fall precisely within the language of the exception.
The nature and history of the attorney-client privilege support this conclusion. The attorney-client privilege is the oldest of the privileges for confidential communication, reaching back to Elizabethan times, and is said to be rooted in Roman law. See 8 Wigmore, Evidence (McNaughten rev. 1961), § 2290; McCormick, Evidence, § 91 (1954).
As Wigmore points out, the privilege seems to have been developed originally as a natural exception to the then novel right of testimonial compulsion. The original theory of its exclusion was "a consideration for the oath and the honor of the attorney rather than for the apprehension of his client" (§ 2290). This theory was ultimately repudiated by a recognition that "the judicial search for truth could not endure to be obstructed by a voluntary pledge of secrecy, nor was there any moral delinquency or public odium in breaking one's pledge under force of the law" (§ 2290).
The following further quotation from Wigmore enunciates the modern policy theory and the subjective consideration upon which the privilege is grounded:
"In order to promote freedom of consultation of legal advisors by clients, the apprehension of compelled disclosure by the legal advisors must be removed; hence the law must prohibit such disclosures except on the client's consent." (§ 2291)
Our courts have recognized that where the privilege is applicable, it must be given as broad a scope as its rationale requires; that is, the promotion of the client's freedom of consultation with his legal advisor and the assurance that the risk of disclosure by the attorney has been removed. State v. Kociolek, 23 N.J. 400, 415 (1957). See Hansen v. Janitschek, 57 N.J. Super. 418, 433 (App. Div. 1959) *169 (dissenting opinion), reversed 31 N.J. 545 (1960) (adopting dissenting opinion below).
Our courts have also been cognizant, however, that the privilege results in the exclusion of relevant evidence. See Hansen v. Janitschek, supra, 57 N.J. Super., at p. 433 (dissenting opinion). More harshly, it has been described as "a privilege to suppress the truth." 1 Morgan, Basic Problems of Evidence 101 (1954). This thought finds cogent expression in the dissenting opinion of Judge Conford in the Hansen case:
"* * * Nevertheless, since the privilege results in the exclusion of evidence, the doctrine `runs counter to the fundamental theory of our judicial system that the fullest disclosure of facts will best lead to the truth and ultimately to the triumph of justice.' In re Selser, 15 N.J. 393, 405 (1954). It is therefore to be strictly limited to the purposes for which it exists. Ibid., at pages 406, 407. * * *" (57 N.J. Super., at p. 433)
In the case of wills, as Wigmore points out, special considerations come into operation:
"* * * Here it can hardly be doubted that the execution and especially the contents are impliedly desired by the client to be kept secret during his lifetime, and are accordingly a part of his confidential communication. It must be assumed that during that period the attorney ought not to be called upon to disclose even the fact of a will's execution, much less its tenor. But, on the other hand, this confidence is intended to be temporary only. That there may be such a qualification to the privilege is plain. That it appropriately explains the client's relation with an attorney drafting a will seems almost equally clear.
It follows, therefore, that after the testator's death the attorney is at liberty to disclose all that affects the execution and tenor of the will." 8 Wigmore, op. cit., § 2314. See also McCormick, op. cit., § 98.
The rationale of this curtailment of the privilege in testamentary cases is that the apprehension of disclosure after death would in no material degree deter the client from making a full statement of his case to his attorney. See Russell v. Jackson, 9 Hare 392, 68 Eng. Rep. 558, 560 *170 (V.C. 1851); Eicholtz v. Grunewald, 313 Mich. 666, 21 N.W.2d 914 (Sup. Ct. 1946). Thus the recognition which the privilege gives to the need for confidential disclosure may be reconciled with the more fundamental demand for the fullest disclosure of fact in the search for truth.
The exceptions to Rule 26 reflect this fundamental objective of limiting the privilege to the purpose for which it exists. In discussing the broadening of the exceptions to the attorney-client privilege as set forth in Rule 26 (2) (b) from the earlier Model Code Rule 213(2) (a) so as also to except claims by inter vivos transaction, the late Professor Edmund M. Morgan, chief architect of both the uniform rules and the Model Code, stated:
"It has been held, and with good reason, that the privilege is inapplicable also where the contest is by a person claiming under the client by a transfer inter vivos against representatives of the client's estate. Rule 26(2) (b) makes the privilege inapplicable to `a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by inter vivos transaction.'" Morgan, Basic Problems of Evidence, American Law Institute Monograph, p. 117. (Emphasis supplied)
In holding that the exception did not apply in the present case, the trial judge relied upon the authority of Anderson v. Searles, 93 N.J.L. 227 (E. & A. 1919). He concluded that the authority of that case had not been affected or undermined by the adoption of Rule 26(2) (b).
In Anderson the testator's housekeeper asserted the existence of an express contract with testator to the effect that if she would perform services as a housekeeper and a nurse, he would make a specific bequest to her in his will. The court refused to permit the plaintiff's attorney to testify to the circumstances surrounding the execution of two earlier wills later superseded by the probated will which substantially disinherited the plaintiff. The court held simply that "it was a communication made by a client to his attorney, and therefore was privileged." At p. 228.
*171 We are satisfied that the Legislature, in adopting the exception embodied in Rule 26(2)(b) to the attorney-client privilege, intended to include the present situation and intended to repudiate the doctrine laid down in Anderson. We perceive no value in attempting to preserve the vitality of that doctrine. In our view, the language of the rule is clear and explicit. If more were needed, it appears from the comments appended to this very provision that the framers of the rule so intended:
"In fact the testimony sought to be adduced in Anderson v. Searles. 93 N.J.L. 227 (E. & A. 1919) would have been admissible under the theory expressed in Rule 26(2) (b), but that theory was doubtless not called to the court's attention. * * *" Report of the Committee on the Revision of the Law of Evidence, p. 69 (1955).
Although this comment does not have the force of law, it is entitled to great weight, especially since it is consistent with the language and the spirit of the rule and the purpose of the privilege.
In an effort to preserve the validity of Anderson, the trial judge drew a distinction between a claim made "through the decedent" and one "against the decedent's estate," concluding that plaintiff in the present case claimed against the decedent. In doing so, he purported to follow In re Crook's Estate, 87 N.J. Super. 210 (Cty. Ct. 1965). There, beneficiaries under a prior will of a decedent moved to set aside probate of a later will under which the decedent's doctor received a substantial bequest. There, also, the parties claiming the benefits of the prior will sought to obtain discovery from the attorney who drew the later will, and the attorney-client privilege was invoked.
The court in Crook, relying on Rule 26(2) (b), held that the privilege did not exist because "all of the parties, including defendant, claim an interest in decedent's estate." Anderson was distinguished on the ground that the "* * * claim (in Anderson) was adverse to the interest of the client; *172 it was for services rendered under an alleged contract with decedent."
We need not at this time determine the validity of such a distinction which has spawned much confusion and resulted in great inconsistency in the decisions of our sister states. See Annotation, 64 A.L.R. 184 (1929) as supplemented in 66 A.L.R.2d 1302 (1959). In this connection, we observe that because of the adversary nature of our legal system, any claim asserted, regardless of whether it arises by testate or intestate succession or by inter vivos transaction, may in a sense be said to be against or adverse to the ostensible interest of a deceased client or his estate as that interest appears to be expressed in the document or status being challenged. However, it can hardly be argued under Rule 26(2)(b) that in every case where a person files an action or makes a claim against an executor or an estate the attorney-client privilege may be invoked. If such an interpretation were adopted, it would render the exception contained in Rule 26(2) (b) meaningless for all practical purposes.
The language of that provision suggests that it is oriented in the main towards controversies involving decedent estates and their distribution or inter vivos transactions, such as the creation and settlement of trust funds. In the case of estates it appears to be designed to abrogate the privilege in any such controversy where all the parties assert interests in the estate concerned, whether such interests arise by virtue of testate or intestate succession or by inter vivos transaction. It is clear to us that the case before us is such a controversy and that plaintiffs are asserting a right to be beneficiaries of the estate of the decedent and therefore are claiming through her, albeit by inter vivos contract. The privilege may therefore not be invoked.
The order appealed from is reversed.